No. 12694

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

MONTANA NATIONAL BANK OF BOZEMAN,

Plaintiff and Appellant,

-vs-

WILLIAM J. KOLOKOTRONES et al.,

Defendants and Respondents.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Towe, Neely and Ball, Billings, Montana
Gerald J. Neely argued, Billings, Montana

For Respondents:

Patrick F. Hooks argued, Townsend, Montana

Submitted: January 16, 1975
Decided: MAY 23 1975

Filed: MAY 23 1975

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a partial summary judgment entered in the district court, Gallatin County, against plaintiff Montana National Bank of Bozeman and in favor of defendants William and Clare Kolokotrones, awarding the amount of $12,870 in damages, that being double the value of the add-on interest on the promissory note in dispute. Plaintiff Bank appeals from the judgment and contends that as a matter of law there was no usury.

The facts are not in dispute. In early 1970, the Kolokotrones went to the Bank for a loan to buy a self-propelled auger and truck. They signed an interim installment promissory note on April 4, 1970.

On April 27, 1970, Kolokotrones signed the final installment promissory note. Under the terms of that note they borrowed $33,000 at a 6.5% add-on interest rate. Thus, the add-on interest was $6,435. Therefore, the note reflected $39,435 at maturity. This would reflect a real interest rate of 11.75% but is an exception to the statute if properly applied.

The note called for 36 installments, the first to be $500 due June 25, 1970, and 35 monthly installments thereafter at $1,112.42, the final maturity being on or before June 25, 1973, a term of three years. The note contained a provision that past due principal and interest would bear interest at the rate of 10% per annum until fully paid.

Kolokotrones had trouble making payments on the note and it became delinquent to the point of seriousness. They made the initial $500 payment on or about July 22, 1970 and thereafter were credited with four payments at periodic times. Because of the irregular payment record, the parties agreed on a voluntary repossession of the truck and auger by the Bank. The Bank kept the equipment for several months and then sold it under the provisions

of the security agreement in May 1972, for a total of $25,800. Immediately after the sale the Bank's Assistant Vice President and loan officer, who dealt with the Kolokotrones during the entire proceeding, wrote the Kolokotrones a letter on May 12, 1972, demanding payment of the sum of $11,487.92, plus the Bank's costs of sale in the amount of $113.56. Attached to the Bank's letter was the schedule of payments and interest. This schedule reflected the Bank's allocation of payments received, including the proceeds of sale, to principal and interest, and supported the demand for the balance. This was the schedule:

"William J. Kolokotrones
Box 952, Three Forks, Montana 59752
Account No. I-2958-25          Date of Note - April 27, 1970, APR 11.75%

| | | Schedule of payments and interest | | | | |
|---|---|---|---|---|---|---|
| Date Paid | Amount Paid | Interest Accrued | Paid on Interest | Current Bal of Interest | Paid on Principal | Princ. Balance |
| 4/27/70 | | | | | | $33,000.00 |
| 7/22/70 | $ 500.00 | $ 913.55 | 500.00 | 413.55 | 00 | 33,000.00 |
| 10/ 2/70 | 420.00 | 764.83 | 420.00 | 758.38 | 00 | 33,000.00 |
| 11/25/70 | 1,129.35 | 573.63 | 1,129.35 | 202.66 | 00 | 33,000.00 |
| 7/29/71 | 1,800.00 | 2,623.81 | 1,800.00 | 1,026.47 | 00 | 33,000.00 |
| 10/ 5/71 | 424.84 | 393.04 | 424.84 | 994.87 | 00 | 33,000.00 |
| 5/ 4/72 | 15,000.00 | (sale)2,252.01 | 3,246.88 | 00 | $11,753.12 | 21,246.88 |
| 5/10/72 | 9,800.00 | (sale) 41.04 | 41.04 | 00 | 9,858.96 | 11,487.92" |

The total interest to be paid was $7,561.91 or $1,126.91 more than the amount of interest stated on the face of the April 27 note.

The Bank, in explaining the difference between the terms of the April 27 note and the terms of the schedule under which the Bank was attempting to collect, stated that the loan officer approached a senior officer of the Bank desiring his opinion on the fairest way of collecting the note. The senior bank officer agreed the fairest and simplest manner would be to charge a straight 11.75% interest on the note and abandon the 10% interest rate on the past due amounts.

Both parties moved for summary judgment. The Bank moved for summary judgment on the entire case after filing a second amended reply to defendants' counterclaim. Kolokotrones moved for partial summary judgment on their counterclaim. The district court granted Kolokotrones' motion and denied the Bank's motion. Judgment was entered in favor of defendants in the amount of $12,870. From this judgment plaintiff Bank appeals.

The Bank argues it was not guilty of usury and the district court erred in so finding. More specifically, it argues that the note, if performed according to its terms, would not result in producing to the Bank a greater rate of interest than is allowed by law; that in fact there was not an exaction of a greater amount than allowed by law; that there was no mutuality of intent to give and to take usury; and, that the demand made upon Kolokotrones in accord with the computation schedule attached thereto did not constitute usury.

This Court cannot agree with the Bank's argument. Montana's usury statute, section 47-125, R.C.M. 1947, provides that parties may agree for the payment of any rate of interest not exceeding the rate of 10% per annum. The note itself states that the annual percentage rate of the note is 11.75%.

The only exception to this usury statute affecting banks is section 5-527, R.C.M. 1947, which provides that a bank can collect its interest in advance. That statute states:

> "5-527. (6014.52) Interest not to exceed lawful rate--permissible charge on installment loans. No bank shall demand or receive for loans or discounts, a rate of interest exceeding that allowed by law, excepting that it shall be lawful for any bank to receive interest in advance according to the ordinary usages of banking institutions. On loans to be repaid in one or more deferred installments a bank may charge not to exceed the following schedule: On so much of the principal balance as does not exceed three hundred dollars ($300), eleven dollars ($11) per one hundred dollars ($100) per year; if the principal balance exceeds three

- 4 -

hundred dollars ($300), but is less than one
thousand dollars ($1,000), nine dollars ($9)
per one hundred dollars ($100) per year on that
portion over three hundred dollars ($300); if
the principal balance exceeds one thousand
dollars ($1,000), seven dollars ($7) per one
hundred dollars ($100) per year on that portion
over one thousand dollars ($1,000). Such
charges shall be computed on the principal bal-
ance on contracts payable in successive monthly
payments substantially equal in amount from the
date of the contract until the maturity of the
final installment, notwithstanding that the
total balance thereof is required to be paid in
installments. A minimum charge of twenty dollars
($20) may be made with respect to any install-
ment loan made by a bank. When an installment
loan contract provides for payment other than in
equal successive monthly installments the charge
may be at a rate which will provide the same
yield as is permitted monthly payment contracts
having due regard for the schedule of payments
in the contract."

Thus, the maximum interest in terms of add-on or discount interest that can be legally taken under Montana law on $33,000 is $7,008, computed this way:

    $11.00 per $100.00 per year on the 1st
       $300.00 for 3 years ($33.00 x 3)..........$    99.00

    $9.00 per $100.00 per year on the next
       $700.00 for 3 years ($63.00 x 3)..........   189.00

    $7.00 per $100 per year on the next
       $32,000.00 for 3 years (2,240.00 x 3).....  6,720.00

    Total Allowance Discount Interest............$7,008.00

The Bank, however, demanded $7,561.91, a difference of $553.91. The Bank's demand on the Kolokotrones was therefore usurious.

Here we have a note which originally started out using the principle of add-on interest, which would have been legal under section 5-527, R.C.M. 1947, but the Bank then switched to using a straight application of the 11.75% per annum interest rate. That made the note usurious.

The Bank contends that one of the terms of the note was a 10% penalty on the past due principal and interest, and such penalty could not be considered in terms of usury as the Kolo-kotrones had it within their power to prevent the penalty, there-

fore it was not part of the interest rate of the note. Further, that the Bank's demand represents a lesser amount than the Bank would have been entitled to had it used the 10% penalty.

Kolokotrones argue that the Bank's argument is irrelevant to the instant case, for the Bank abandoned the 10% penalty, and so stated in a letter to Kolokotrones' attorney, dated October 7, 1972.

This Court finds the abandonment of the penalty charge by the Bank dispositive of that issue.

The Bank also contends there was not the necessary intent for the Bank to be guilty of usury. This Court in Bowden v. Gabel, 105 Mont. 477, 487, 76 P.2d 334, stated:

> "Defendant contends that the requisite intent was not shown here to establish usury. This contention cannot be sustained, for it is well settled that the voluntary taking of more than the legal rate of interest constitutes usury. The only intent necessary is the intent to take more interest than the law permits. Usurious intent is implied if excessive interest is intentionally taken. It is of no consequence that there was no specific intent knowingly to violate the law." (Emphasis ours.)

It follows that the Bank had the necessary intent, by intending to take from Kolokotrones more than the legal amount of interest.

The Bank also argues the demand for $7,561.91 was not a binding contract between it and Kolokotrones; that the Court must look to the original note to determine if the note was usurious. Further, because the installment note of April 27, 1970, on its face was within the provisions of the bankers' exception to the usury law, section 5-527, R.C.M. 1947, the judgment in the district court was entered erroneously.

However, the note on which the Bank brought this action is an anomaly in itself. It is not an installment note, but was the only note form the Bank had at the time. It did not explain the installment payments. The Bank construed the terms of the note, in making its demand on the Kolokotrones, as a straight

loan of $33,000 at 11.75% interest per annum, and that is the contract it now seeks to enforce. The terms of the note are not clear on its face, but, when read in light of the Bank's letters to Kolokotrones, the intent of the parties becomes clear. The terms of the note are usurious.

The Bank next contends the Kolokotrones were awarded an incorrect amount of money; that they should have been awarded twice the amount of the difference between the interest charged and the maximum allowed by section 5-527, R.C.M. 1947. We find that statute speaks for itself. Section 47-126, R.C.M. 1947, specifically states that there shall be a "forfeiture of a sum double the amount of interest which the note, bill, or other evidence of debt carries, or which has been agreed to be paid thereon." The amount of interest appearing on the face of the note was $6,435. Twice that amount is $12,870. That is the amount to which the Kolokotrones are entitled, and that is the award of the district court.

Finally, the Bank argues there was no written demand made by the Kolokotrones for the return of the usurious interest as required by section 47-126, R.C.M. 1947, which provides:

> "The taking, receiving, reserving, or charging
> a rate of interest greater than is allowed by
> the preceding section shall be deemed a for-
> feiture of a sum double the amount of interest
> which the note, bill, or other evidence of debt
> carries, or which has been agreed to be paid
> thereon.
>
> "When a greater rate of interest has been paid,
> the person by whom it has been paid, his heirs,
> assigns, executors, or administrators, may re-
> cover from the person, firm or corporation
> taking, receiving, reserving, or charging same
> a sum double the amount of interest so paid;
> provided, that such action shall be brought
> within two years after the payment of said interest;
> and provided, that before any suit may be brought
> to recover such usurious interest, the party bring-
> ing suit must make written demand for return of
> said interest so paid." (Emphasis added.)

Both parties rely on the language of Bowden v. Gabel, 105 Mont. 477, 76 P.2d 334, to sustain their position concerning the notice requirement contained in the second paragraph of section 47-126. Bowden does recite that there are two different situations contemplated by the statute and cites Miller v. Oklahoma State Bank, 53 Okl. 616, 157 P. 767, for the proposition that demand is not required to obtain relief under the first paragraph of section 7727 [now section 47-126]. Miller does rely on a North Dakota case which indicates that the first paragraph rests in contract when the interest has been charged, and the second paragraph deals with a circumstance where the interest has been paid. In Bowden the representative of a machine company brought suit against the usurer and the facts there do not harmonize with the instant case, nor was our problem here decided there. All these citations deal for the most part with suits against the usurer. The statute is clear on this point and requires a party bringing suit to make a demand for return of the interest. Case law says it applies to the second paragraph of section 47-126, R.C.M. 1947, only.

Here, Kolokotrones did not bring the suit for recovery. The Bank sued them, and they responded with their defenses. If their counterclaim could in any way be construed to be within the contemplation of the second paragraph of section 47-126, as has been argued, then it would have to be said that demand would in any case be an idle act as a condition to filing an answer and defenses. This would not be required under section 49-124, R.C.M. 1947.

The partial summary judgment granted by the district court is affirmed and the cause remanded to the district court for further proceedings.

_____
Justice

- 8 -

We concur:

_____
Chief Justice

_____

_____
Justices