No. 13024

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

WESTERN MONTANA CLINIC,

Plaintiff and Appellant,

-vs-

DAVID P. JACOBSON, M.D.,

Defendant and Respondent.

---

Appeal from:   District Court of the Fourth Judicial District,
               Honorable Jack L. Green, Judge presiding.

Counsel of Record:

   For Appellant:

       Boone, Karlberg and Haddon, Missoula, Montana
       Karl R. Karlberg argued, Missoula, Montana

   For Respondent:

       Garlington, Lohn and Robinson, Missoula, Montana
       Sherman V. Lohn argued, Missoula, Montana
       Lawrence F. Daly argued, Missoula, Montana

---

                              Submitted: November 5, 1975

                                Decided: JAN 9 1976

Filed:

Thomas J. Kearney
                                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a summary judgment for defendant entered on the ground that a restrictive covenant against competition violated the laws of Montana and was not within the statutory exceptions contained in sections 13-808 and 13-809, R.C.M. 1947.

The sole issue on this appeal is whether the restrictive covenant contained in Article XX of the Articles of Association of the Western Montana Clinic, an unincorporated association, is enforceable.

On June 30, 1948, the Western Montana Clinic, as a partnership of physicians practicing medicine in Missoula, was dissolved and Articles of Association were executed by the former partners, forming an "unincorporated Association" for the practice of medicine, at the same location and under the same name as the former partnership. From that day forward, the new Association has continued without dissolution. Physicians associated with the Clinic may be divided into two main groups: employees and members. Traditionally a new doctor is made an employee for a period of one or two years, and then he is required to become a member. That status of "member" is further subdivided into "junior" and "senior" members. At the times in question the Clinic was composed of some 25 member physicians and 6 employee physicians practicing various medical specialities, together with numerous other medical and administrative employees.

Defendant, Doctor Jacobson, is a licensed orthopedic surgeon who became an employee of the Western Montana Clinic on approximately January 1, 1968. On approximately January 1, 1970, in accordance with the established policy of the Clinic, defendant was required to purchase $5,200 of stock in the Western Montana Clinic Building Corporation and thereby was accepted as a

junior member of the Clinic. The Western Montana Clinic and The Western Montana Clinic Building Corporation are separate legal entities. Approximately two years later, again following Clinic policy, defendant was required to purchase an additional $5,200 of stock in the Building Corporation and became a senior member of the Clinic.

On August 1, 1973, defendant withdrew from the Clinic for alleged professional reasons and established a private practice limited to orthopedic surgery at Professional Village in Missoula. Defendant also maintains smaller practices at St. Joseph's Hospital in Polson, Montana, and at the Student Health Center at the University of Montana.

This controversy arose from a demand by the Clinic that defendant pay it 30% of the gross proceeds from his medical practice for the three years following August 1, 1973. This provision was contained in the Articles of Association. Defendant refused, and the Clinic filed this action.

In his motion for summary judgment, defendant asserted simply that by virtue of the unique provisions of Article XX and other clauses in the Clinic's Articles of Association, this particular restrictive covenant fails to come within Montana's narrow statutory exceptions permitting such agreements and is therefore an illegal contract in restraint of trade, unenforceable in this State.

The statutes involved here are:

13-807, R.C.M. 1947. "Contract in restraint of trade void. Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by the next two sections, is to that extent void."

13-808, R.C.M. 1947. "Exception in favor of sale of good will. One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or part thereof, so long as the buyer,

or any person deriving title to the good will
from him, carries on a like business therein."

13-809, R.C.M. 1947. "Exception in favor of part-
nership agreements. Partners may, upon or in
anticipation of a dissolution of the partnership,
agree that none of them will carry on a similar
business within the same city or town where the
partnership business has been transacted, or
within a specified part thereof."

Article II of the Articles of the Clinic provides:

"ARTICLE II - AN UNINCORPORATED ASSOCIATION

"The parties hereto hereby associate themselves
together for the practice of medicine and surgery
as an unincorporated Association which shall be known
and designated as 'The Western Montana Clinic'. This
Association shall be endowed to the extent permissible
by law with all the attributes of a corporation, and
shall be treated as a corporation for purposes of
taxation, and all other purposes, subject, however,
to the requirement of the law that the relationship
between the members of the Association as physicians
and surgeons and their patients shall be direct, per-
sonal and confidential. In all matters relating to
the fiscal and business management of the Association,
the relationship between the members and the Associa-
tion shall in all respects be identical to that which
would exist were the Association a corporation. It
is contemplated that the members of the Association
shall become employees of the Association and subject
to its management and control in the same manner as
other employees, notwithstanding their ownership of
beneficial interests in the Association." (Emphasis
supplied.)

It is seen from this language, and from the undisputed history of

operation, that as between defendant Dr. Jacobson and the Clinic,

the Clinic shall be treated as a corporation and the articles ex-

pressly deny a partnership relationship as contemplated by the

exception contained in section 13-809. Thus, the language of the

restrictive covenant does not fall within the partnership excep-

tion of 13-809.

Articles XX and XXI of the Clinic provide:

"ARTICLE XX - MEMBERS RESTRICTED IN RIGHT TO RE-
ENGAGE IN PRACTICE   Amended and subscribed to
2 November 1967

"Each Member of this Association (whether now a
Member or afterwards becoming a Member; whether
a Senior or Junior Member) does hereby agree that

- 4 -

in the event of his separation from this Association, in any manner or for any cause other than for disability, he will thereby and thereupon be selling to the Association and the remaining Members thereof his interest in the good will of said Association, and in view of the fact that thereafter such separating Member will no longer be a Member in the Association, and for the protection of the good will aforesaid, the said Members aforesaid, including Members hereafter joining the Association, agree that in the event that any of them withdraws from this Association or is expelled therefrom he will not engage in, or carry on the practice of medicine or surgery within the county of Missoula, state of Montana, for the period of three years from the date of such separation, or for the period during which the said Association or its other Members carry on the practice of medicine or surgery within said county, whichever period be the shorter. * * *"

"ARTICLE XXI - <u>RENUNCIATION OF DIVISION OF THE ASSETS OF THE ASSOCIATION UPON THE DEATH, RETIREMENT, WITHDRAWAL OR EXPULSION OF A MEMBER</u>

"In order to assure continuity of the Association without impairment of its capital, which might result if a Member were entitled to a division of assets upon his death, retirement, withdrawal or expulsion, the Association is creating the Retirement or Pension Plan to provide retirement benefits and death benefits to its Members, the terms of which plan are referred to hereafter. Therefore, each present and future Member does hereby renounce any and all claims to any division of the assets of the Association upon his death, retirement, withdrawal or expulsion prior to the termination of the Association, and agrees to accept in lieu thereof the benefits, if any, payable under such plan."

We consider now the language of the exception in section 13-808 to the law against contracts in restraint of trade when such contract is in conjunction with the sale of good will of a business. In other words, does Article XX come within the exception to permit such a contract?

The Clinic's position, simply stated, is that Articles XX and XXI state that in exchange for a member joining the Clinic without cost, and thus be entitled to an immediate lucrative share in an established practice, he agrees that on termination, he sells and transfers whatever interest he has, including goodwill, without cost; and, must not compete with the Clinic for three

years to assure the effective retention of goodwill by the Clinic.

On the other hand, defendant's position is that at the moment each member joins the association, he relinquishes "any and all claims to any division of the assets" in exchange for benefits under the association retirement and pension plans; and that included in the items thus relinquished is any claim to goodwill he might have at the time of his withdrawal from the association. In other words, upon admission of a member, he buys nothing, and at the time of his retirement or death, he takes out nothing; thereby, reasons defendant, there has been no sale of goodwill sufficient to bring the exception contained in section 13-808 into play. Put another way, defendant could not sell any goodwill to the association because as a result of Article XXI, all the assets of the Clinic, including goodwill, were already owned by the association. Goodwill, goes this argument, is an incident to and inherent in the business and may not exist separate from the business. Sections 67-1111, 67-1112, R.C.M. 1947; Wylie v. Wylie Permanent Camping Co., 57 Mont. 115, 187 P. 279. Then, defendant defines sale as used in section 13-808, as defined in sections 74-101 through 74-106, R.C.M. 1947.

This Court in Jenson v. Olson, 144 Mont. 224, 227, 395 P.2d 465, stated our rule:

> "A covenant not to compete is a restrictive covenant in restraint of trade and is valid only in certain lines of enterprise and only if it constitutes a reasonable restriction on the freedom to do business. Sections 13-807, 13-808, 13-809, R.C.M. 1947."

Defendant in his brief states: " * * * a professional man who sells his practice and his goodwill may agree not to compete, if there is a consideration and a legitimate sale of goodwill involved." Then he goes on to reassert that there was no "legitimate" sale of goodwill by virtue of Article XXI of the

- 6 -

Articles of Association because technically Dr. Jacobson had no goodwill to sell, and was paid nothing for it. Defendant cites Haas v. Hodge, 171 Cal.App.2d 478, 340 P.2d 632, 635.

California had identical statutes to Montana's. In Haas two physicians entered into an agreement whereby one Dr. Hodge disclaimed any right or claim to any "professional practice herein mentioned and referred to and to the goodwill thereof." Dr. Haas was attempting to enforce an anticompetitive covenant by claiming it came under the exception for agreements ancillary to the sale of goodwill. The California District Court of Appeals, Division 2, refused to enforce the covenant saying:

> "Whatever may be the technical status flowing from the contract, it remains true that the last paragraph operates as a present renouncement of any interest in the 'professional practice' of Dr. Haas or the goodwill thereof. This left Dr. Hodge with no inchoate right to future accruing goodwill, for the practice belonged to Dr. Haas and the goodwill belonged to him as an incident to ownership of the practice, present and future. * * *

> "Defendant could not sell the present or future goodwill of the business in this instance, for the business and its goodwill belonged to plaintiff Haas."

In this case, because of Article XXI, defendant had no goodwill from the business to sell to the Association.

Definitions for "sale" and related terms are given in sections 74-101 through 74-106, R.C.M. 1947. These statutes provide that in order for there to be a sale, or an agreement to sell, there must be payment, or agreement to pay pecuniary consideration--a price--in exchange for the transfer to another of an interest in property. In Interrogatory No. 9, dated August 26, 1974, defendant asked the Clinic to specifically describe the terms of the alleged sale of goodwill; when did it take place; what was the consideration; how was it paid? The Clinic's answer merely pointed to Article XX.

When the Montana legislature carved out two exceptions to the prohibition against contracts in restraint of trade, it did so carefully, with full awareness that there was legitimate public interest in favor of allowing restrictive covenants ancillary to the sale of a business. But that public interest exists only when there is a genuine sale of goodwill. Obviously, the language of Article XX was drafted in an effort to achieve protection under section 13-808, R.C.M. 1947. However, no "sale" of anything took place at the time of defendant's departure; and the self-serving language to the contrary in Article XX is contradicted by every single fact and circumstance surrounding the organization and operation of the Western Montana Clinic and the withdrawal of defendant Doctor Jacobson.

While numerous cases are cited in both briefs, they do not apply to our situation where the exception under the statute is sought. For a collection of cases on Validity and Construction of Contractual Restrictions on Right of Medical Practitioner to Practice, Incident to Sale of Practice, see Anno. 62 ALR3d 918.

We hold that there was no sale of goodwill under the statute and thus the restrictive covenant is unenforceable.

Having examined the issues, and finding no error, we affirm.

_Wesley Castles_
Justice

We concur:

_James T. Harrison_
Chief Justice

_Frank J. Haswell_

_John Conway Harrison_

_Gene B. Daly_
Justices

- 8 -